UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  16-62902-CIV-ZLOCH

WILLIAM MCLEOD, individually and
on behalf of all others similarly situated,

Plaintiffs,

v.

MONAKER GROUP, INC., f/k/a
NEXT 1 INTERACTIVE, INC., et al.,

Defendants.

_____/

**DEFENDANT, D'ARELLI PRUZANSKY, P.A.'S,
MOTION TO DISMISS CLASS ACTION COMPLAINT
<u>AND INCORPORATED MEMORANDUM OF LAW</u>**

Pursuant to Rules 9(b) and 12(b)(6), *Federal Rules of Civil Procedure*, the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and other applicable law, Defendant, D'Arelli Pruzansky, P.A. ("DAP"), respectfully moves to dismiss Plaintiff, William McLeod's ("Plaintiff"), Complaint, upon the following grounds:

## I.      <u>INTRODUCTION</u>

This action is in essence a shareholder derivative suit in disguise. At its core, this is nothing more than a complaint by a disgruntled shareholder who alleges internal corporate mismanagement. Plaintiff accuses various Defendants of securities fraud under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5. But Plaintiff's single claim against DAP is far narrower, in that DAP's role as an outside auditor is fundamentally different from that of an issuer of securities or of an issuer's management. As an accounting firm and outside auditor, DAP stands apart from the other Defendants, and Plaintiff's effort to plead a viable claim against DAP for participating in the alleged fraudulent scheme falls woefully short.

By this action, an accredited investor who neither purchased nor sold a single share of Monaker Group, Inc., f/k/a  Next 1 Interactive, Inc.'s ("Monaker")[1] common stock in the "open market" is claiming—without any details of any kind—that the market price of that company's thinly-traded "penny stock" was somehow artificially inflated over a four-year period.  Plaintiff bases this assertion on his belief that Monaker did not itemize, in its audited financial statements, various intercompany transfers or advances of money to one of the company's fully-disclosed subsidiaries- RealBiz Media Group, Inc. ("RealBiz").

Plaintiff fails to satisfy the heightened pleading burden under Rule 9(b) and the additional pleading requirements under the PSLRA.  Specifically, Plaintiff fails to plead with the requisite *heightened specificity* that Monaker's outside accountants—with whom he had no interactions of any kind—intentionally misrepresented or omitted material facts *to him* in connection with *his* purchase or sale of Monaker common stock and upon which *he* relied to his detriment.  He fails to allege that DAP was involved in any scheme to defraud investors with any specificity whatsoever.  In so doing, Plaintiff ignores a panoply of adverse financial information and disclosures in the company's public filings that, when taken together, remove any possible materiality from the allegedly undisclosed intercompany transfers (which transfers are actually being disputed by the alleged transferee in separate litigation). Plaintiff also ignores the simple

---

[1] Next 1 Interactive, Inc. changed its name to Monaker Group, Inc. on June 24, 2015.

fact that DAP actually employed appropriate accounting and auditing standards and procedures with respect to its treatment of intercompany transactions and balances. Finally, despite his utilization of a "fraud on the market" theory to satisfy the reliance element of a 10b-5 claim, Plaintiff ignores a host of disclosures in the company's public filings explaining that its shares did not trade in an open, efficient market and were, therefore, essentially illiquid.

This perhaps explains why Plaintiff fails to state either the price at which he allegedly purchased common shares of Monaker stock in the open market, or the price of that stock after Monaker filed the allegedly corrected disclosures in 2016. In other words, Plaintiff fails to provide even the most basic factual information required to support his assertion that Monaker's stock price was "artificially inflated" at any point during the class period. Plaintiff also fails to provide any factual support for his general contention that the company's stock price declined in 2016 following the issuance of the so-called corrective disclosures. In fact, Plaintiff rather obviously fails to identify *any actual stock prices* in his complaint, much less the prices at which he actually purchased and sold shares of Monaker stock in the open market. These omissions are fatal to Plaintiff's securities fraud claim against DAP.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Rather than recite facts already stated by Defendants, Monaker, William Kerby and Don Monaco (collectively the "Defendants"), DAP incorporates by reference Defendants' Statement of Facts (ECF No. 30 at pp. 3-4). In addition, DAP asserts the following:

Plaintiff is a purported lead class plaintiff that purchased convertible, preferred shares directly from Monaker through a private offering, as an accredited investor (ECF Nos. 8 and 25). Monaker is a media based company utilizing video as a key driver to create consumer awareness of products and opportunities in the travel, home and employment sectors. Exhibit "A" at p. 6. [2] Defendant William Kerby has been the Chief Executive Officer of Monaker since 2008. Complaint at ¶ 16. Since 2015 Defendant Don Monaco has been the Chairman of the Board for Monaker and has served on the Monaker Board of Directors since 2011. Complaint at ¶ 17.

---

[2] In a securities fraud case such as this, a court may take judicial notice of public documents filed with the SEC such as the 10-Ks referenced in Plaintiff's Complaint. *In re Jiangbo Pharmaceuticals, Inc., Securities Litigation*, 884 F.Supp.2d 1243, 1255 (S.D. Fla. 2012) (citing *Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1278 (11th Cir.1999)). The Monaker Form 10-Ks filed for the fiscal years ending February 29, 2012 (Exhibit "A"), February 28, 2013 (Exhibit "B"), February 28, 2014 (Exhibit "C") and February 28, 2015 (Exhibit "D") are attached hereto.

DAP is a public accounting firm that served as an auditor of Monaker's financial statements during the purported class period of April 6, 2012 through June 23, 2016 (the "Class Period"). Complaint at ¶ 20. According to Plaintiff, the relevant class consists of all persons who acquired Monaker stock during the Class Period. *Id.* at ¶ 1.

On or about October 19, 2012, Plaintiff made his first purchase of Monaker stock through a subscription agreement. ECF No 25 at p. 9.[3] At that time, he purchased 6,000 Convertible Preferred Class D shares of Monaker stock. *Id.* Plaintiff acquired these preferred shares directly from Monaker through a private offering, as an accredited investor. *Id.* Plaintiff did not acquire these preferred shares on the open market, and contrary to the allegations contained in paragraph 13 of the Complaint, Plaintiff's certification does not evidence that he purchased shares of Monaker common stock. Over the next two years, Plaintiff made three additional purchases of Monaker stock through private offerings. ECF No. 25 at pp. 4, 5 and 7. Plaintiff did not acquire these preferred shares on the open market, and contrary to the allegations contained in paragraph 13 of the Complaint, Plaintiff's certification does not evidence that he purchased shares of Monaker common stock.

Prior to Plaintiff's purchase of Monaker shares, and throughout the Class Period, Monaker's public filings highlighted the perilous financial situation Monaker was facing. The 10-K filed for the fiscal year ending February 29, 2012, provided that Monaker had "an accumulated deficit of $66,983,176." Exhibit "A" at p. 92. Despite the clear warning signs, Plaintiff went forward with his purchase of Monaker stock and continued to purchase preferred shares over the next two years.

Plaintiff alleges that Monaker was "secretly funding" RealBiz for many years. Complaint at ¶ 85. Plaintiff relies on the 10-Ks filed by Monaker to support his claims that Monaker paid up to $11.1 million of Monaker's funds into RealBiz' operations. *Id.* However, Plaintiff ignores the true relationship between Monaker and RealBiz. On October 9, 2012, RealBiz became a consolidated subsidiary of Monaker. This transaction was disclosed on Monaker's 2013 10-K. Exhibit "B" at p. 38. On October 31, 2014, when Monaker's interest in RealBiz dropped below 50%, the two companies were deconsolidated. Exhibit "D" at p. 5. While RealBiz was a consolidated subsidiary of Monaker, Monaker was not only entitled to "eliminate" intercompany transactions on its financial statements, but was required to do so

---

[3] ECF Nos. 8 and 25 are incorporated by reference into the Complaint. Complaint at ¶ 13.

under Generally Accepted Accounting Principles ("GAAP").  *See, e.g.,* Exhibit "C" at p. 72. Once RealBiz was deconsolidated, Monaker began reporting the intercompany transactions on its 10-Ks.

On December 9, 2016, this action was filed.  On December 16, 2016, the Court entered an order dismissing Plaintiff's state law cause of action for negligence against DAP (ECF No. 7).[4]  DAP now files this motion to dismiss because Plaintiff fails to state a viable securities fraud claim against it.

### III.   ARGUMENT

#### A.   Incorporation Of Defendants' Argument

DAP incorporates by reference Defendants' Argument set forth in Section III of its Motion to Dismiss. (ECF No.30 at pp. 6-21).

#### B.   Plaintiff Fails To Satisfy The Required Heightened Pleading Requirements

In a private securities fraud claim under § 10(b) of the Securities Exchange Act of 1934 and Securities and Exchange Commission Rule 10b–5, Plaintiff must allege and prove: (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation. *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191–92, 185 L. Ed. 2d 308 (2013). To survive a motion to dismiss, Plaintiff must satisfy: (1) the federal notice pleading requirements in Federal Rule of Civil Procedure 8(a)(2); (2) the fraud pleading requirements in Federal Rule of Civil Procedure 9(b); and (3) the additional pleading requirements in the PSLRA. *In re Galectin Therapeutics, Inc. Sec. Litig.,* 843 F.3d 1257, 1269 (11th Cir.2016).

Under the pleading standards set forth in Federal Rule of Civil Procedure 8(a)(2), the complaint must generally "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In order to properly plead under Rule 9(b), the complaint must specify: 1) precisely what statements were made in what documents or oral

---

[4] The Court's order dismissed Plaintiff's state law negligence claim (Count VI) but inadvertently labeled it as Count V which is Plaintiff's federal claim for Violations of 10(b) of the Exchange Act. This Motion to Dismiss is directed to Count V which is the only surviving claim as to DAP.

representations or what omissions were made; 2) the time and place of each such statement and the person responsible for making it (or, in the case of omissions, not making); 3) the content of such statements and the manner in which they misled the plaintiff; and 4) what the defendants obtained as a consequence of the fraud. *Ziemba v. Cascade Int'l, Inc.,* 256 F.3d 1194, 1202 (11th Cir.2001).

In addition to the already heightened pleading requirements under Rule 9, the PSLRA provides that a plaintiff "must specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1)(B). Second, the PSLRA requires that scienter allegations, for each alleged act or omission, must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2)(A).

**C.**     <u>**Plaintiff Failed To Identify Misrepresentations Of Material Fact Made By DAP**</u>

      **i.**     **Plaintiff Failed To Properly Allege DAP Made A Misstatement or Concealed Certain Facts**

A plaintiff in an action brought under Section 10(b) must demonstrate that the defendant made a misstatement or omission and that such statements were material. To fulfill the materiality requirement, "there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Oxford Asset Mgmt. v. Jaharis,* 297 F.3d 1182, 1189 (11th Cir.2002) (*citing Basic Inc. v. Levinson,* 485 U.S. 224, 23132, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988)). Material misrepresentations or omissions "must state with particularity the circumstances constituting fraud." *Instituto De Prevision Militar v. Merrill Lynch*, 546 F.3d 1340, 1352 (11th Cir.2008)(quoting Rule 9(b)). Moreover, the PSLRA requires the complaint specify each misleading statement and why the information was misleading. *Philadelphia Fin. Mgmt. of San Francisco, LLC v. DJSP Enterprises, Inc.*, No. 10-61261-CIV, 2011 WL 4591541, at *11 (S.D. Fla. Sept. 30, 2011)(Zloch, J).

Plaintiff fails to adequately allege that he purchased, held or sold shares of Monaker stock based on any material representation or omission made by DAP. Plaintiff simply makes the sweeping statement that he and other purported class members "purchased Monaker stock based

on materially false and misleading information causing them to suffer damages…" Complaint at
¶ 92. Though Plaintiff sets forth what he believes to be various issues with the publicly disclosed
financial information, he does not point to any specific statements or omissions by DAP that
induced him into purchasing Monaker stock. "A sufficient level of factual support for a [10b]
claim may be found where the circumstances of the fraud are pled in detail. 'This means the
who, what, when where, and how: the first paragraph of any newspaper story.'" *Garfield v. NDC
Health Corp*., 466 F.3d 1255, 1262 (11th Cir.2006)(quoting *Gross v. Medaphis Corp.,* 977
F.Supp. 1463, 1470 (N.D.Ga.1997) (quoting *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th
Cir.1990)).  Plaintiff allegations do not provide this level of specificity.

In order to survive dismissal as to DAP, in its role as auditor for Monaker, Plaintiff "must
allege facts that, if true, would permit a conclusion that the auditors knew that they had no
reasonable basis for their opinion." *In re Colonial Bancgroup, Inc. Sec. Litig.,* 9 F. Supp. 3d
1258, 1265 (M.D. Ala. 2014). Plaintiff's claim may only survive "if no reasonable auditor, with
access to the type of information present in [Monaker's] books and records, would have made the
decision to issue a clean audit report." *Id.* at 1267 (internal citations omitted).  Here, DAP never
issued a clean audit report.  Rather, each audit report issued by DAP regarding Monaker
contained an emphasis of matter paragraph, highlighting the expression of substantial doubt
regarding Monaker's ability to continue as a going concern.  *See, e.g*., Exhibit "C" at p. 77.
Rather than provide these details, Plaintiff simply alleges that DAP violated accounting
principles by failing to identify errors in Monaker's financial statements.  Complaint at ¶ 79.

Plaintiff does not allege that DAP prepared Monaker's financial statements or any of the
purported false or misleading information contained within those documents. Instead, Plaintiff
merely alleges that DAP should have been more conscientious when auditing the Monaker
financials and that it failed to "ascertain and disclose such facts as would reveal the materially
false and misleading nature of the financial statements…." Complaint at ¶ 123  In reality, the 10-
Ks at issue include a statement from DAP that it was not responsible for and did not audit
Monaker's internal controls.  *See, e.g*., Exhibit "B" at p. 72. ("[DAP] is not required to have, nor
were we engaged, to perform, an audit of [Monaker's] internal control over financial reporting.
Our audit included consideration of internal control over financial reporting as a basis for
designing audit procedures…but not for the purpose of expressing an opinion of the Company's
internal control over financial reporting.").

ii.     **RealBiz Was A Subsidiary Of Monaker Until October 31, 2014**

The 10-Ks filed by Monaker paint a much different picture than Plaintiff's unsubstantiated allegations. Plaintiff baldly asserts that DAP's "failure to disclose material information to Plaintiff and the other members of the Class during the Class Period" was a violation of Section 10(b) of the Exchange Act and SEC Rule 10b-5. Complaint at ¶ 125.  Under the plain language of Rule 10b-5, the omission of a material fact can only be actionable if the party had a duty to disclose the fact. *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628 (11th Cir. 2010).  In this case, the purported hidden transactions between RealBiz and Monaker did not require disclosure in the public filings because RealBiz was a subsidiary of Monaker during the relevant timeframe. *See, e.g.*, Exhibit "C" at p. 72.

The Financial Accounting Standards Board enacted the FASB Accounting Standards Codification as the source of generally accepted accounting principles in 2009. *Meyer v. St. Joe Co.,* No. 5:11-CV-27, 2012 WL 94584, at *7, n 5 (N.D. Fla. Jan. 12, 2012). Topic 810 of the FASB Accounting Standards Codification ("ASC") entitled "Consolidation" provides that intercompany items and transactions should be eliminated in a company's filed consolidated financial statements. *See,* ASC Topic 810, Subtopic 810-10-S99-4. Statement of Financial Accounting Standards No. 94 ("FAS 94") notes that consolidated financial statements are prepared to:

> present, primarily for the benefit of the shareholders and creditors of the parent company, the results of operations and the financial position of a parent company and its subsidiaries essentially as if the group were a single company with one or more branches or divisions.

*See, e.g., AIMCOR v. United States*, 23 C.I.T. 621, 629 (1999) (applying Financial Accounting Standards stating that "ARB 51, as amended by FAS 94, requires that all investments in which a parent company has a controlling financial interest represented by the direct or indirect ownership of a majority voting interest (more than 50%) be consolidated, except those in which (a) control of the subsidiary is temporary, or (b) significant doubt exists regarding the parent's ability to control the subsidiary.") Monaker "is justified in utilizing consolidated financial statements when corporate control, whether direct or indirect, exists." *Id*    "[A]ccounting standards require the 'elimination' of intercompany transactions, so that income is not inflated due to internal transactions that merely transfer profits and/or assets from one part of the

7

company to another."  *In re Ikon Office Sols., Inc. Sec. Litig.,* 131 F. Supp. 2d 680, 704 (E.D. Pa. 2001).

As the Monaker 10-Ks illustrate, RealBiz was a subsidiary of Monaker until October 31, 2014 when its equity interest in RealBiz eventually dropped below 50%. Exhibit "D" at  p. 5. While Monaker was a majority shareholder in RealBiz, it was entitled to "eliminate" intercompany transactions between itself and its subsidiary RealBiz.  Prior to the deconsolidation, Monaker's 10-Ks provided specific statements related to the consolidated financial statements and the elimination of  transactions with RealBiz as follows:

**Note 1 - Summary of Business Operations and Significant Accounting Policies (continued)**

*Principles of Consolidation*

The accompanying consolidated financial statements include the accounts of the Company and its wholly owned subsidiaries. All material inter-company transactions and accounts have been eliminated in consolidation.

The Company owns an 85% interest in RealBiz Holdings, Inc. and a 61% interest in RealBiz Media and these entities' accounts are consolidated in the accompanying financial statements because we have control over operating and financial policies. All inter-company balances and transactions have been eliminated. The 39% non-controlling interest in RealBiz Media Group, Inc. is represented by 1,009,762 shares of Series A Preferred Stock with an annual dividend rate of 10% and 58,097,461 share of RealBiz Media Group, Inc. common stock

*See, e.g.*, Exhibit "C" at p. 72.  Once RealBiz was deconsolidated from Monaker the 10-K reflected the change in Monaker's ownership interest. Specifically, the 10-K for the fiscal year ending February 28, 2015 stated:

**Recent Acquisitions/Deconsolidation**

At February 28, 2014, the Company owned a 61% interest in RealBiz, which owned an 85% interest in RealBiz Holdings, Inc. On October 31, 2014, the Company's interest dropped to 43% in RealBiz. These entities' accounts are no longer consolidated in the accompanying financial statements because we no longer have a controlling financial interest. All inter-company balances and transactions have been eliminated. The 57% non-controlling interest in RealBiz is represented by 1,009,762 shares of RealBiz Series A Preferred Stock with an annual dividend rate of 10% and 85,799,012 shares of RealBiz common stock issued and outstanding as of February 28, 2015.

Exhibit "D" at p. 23. Going forward, Monaker's financial disclosures began to include the transactions between the two companies:

**Note 12 - Due to/from affiliates**

During the normal course of business, the Company receives and/or makes advances for operating expenses or equity conversion to/from its unconsolidated affiliated Company, RealBiz Media Group, Inc. As of February 28, 2015, the Company owes $974,889 as a result of such transactions.

*Id.* at p. 71.  Since Monaker had *no* duty to disclose these transactions on its financial statements, DAP's representations and purported "omissions" regarding the intercompany transactions were accurate. "Silence, absent a duty to disclose, is not misleading under Rule 10b-5." *Basic*, 485 U.S. 224 at n. 17.

### iii.     Plaintiff Did Not Allege The Materiality Of The Alleged Misrepresentations

Even if the purported misrepresentations (which are not actually identified by Plaintiff) were sufficient to satisfy Plaintiff's pleading obligation, his failure to link the materiality of any

of DAP's purported statements to the purchase of Monaker stock is fatal to his claim. Plaintiff's allegations fail to address how any of DAP's alleged omissions or misrepresentations altered the information that was made available prior to his purchase. *Oxford Asset Mgmt.*, 297 F.3d at 1189. Instead, Plaintiff vaguely claims that DAP's opinions "were materially false and misleading in that they failed to disclose materially adverse information and misrepresented the truth about Monaker's finances." Complaint at ¶ 122. All of the information that he claims was misrepresented or concealed was actually made available and disclosed in Monaker's public filings.

Since Plaintiff failed to allege that DAP made false or misleading material statements this Complaint must be dismissed. *DJSP Enterprises, Inc.*, 2011 WL 4591541, at *15. *See also*, *Sands Point Partners, L.P. v. Pediatrix Med. Grp., Inc.*, No. 99-6181, 2000 WL 35593026, at *3 (S.D. Fla. Jan. 19, 2000) (Zloch, J). ("Based on the foregoing, the Court finds that the Plaintiffs have failed to set forth with adequate particularity in their Amended Class Action Compliant (DE 27) the factual basis for their belief that the Defendants engaged in securities fraud as required by the PSLRA. Therefore, the Defendants are entitled to dismissal.").

**D.**     **DAP Did Not Act With The Requisite Scienter**

**i.**     **Plaintiff Must Allege DAP Acted With Recklessness Or Intent To Defraud**

When the PSLRA went into effect, it imposed a requirement that Plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind" in order to maintain his cause of action. 15 U.S.C. § 78u–4(b)(2)(A). "The 'strong inference' of scienter required under the PSLRA is an inference that is 'cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'" *Jiangbo Pharmaceuticals, Inc., Securities Litigation*, 884 F.Supp.2d 1243, 1255 (S.D. Fla. 2012), *aff'd*, 781 F.3d 1296 (11th Cir.2015)(quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 324, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007). "In making this determination, a court must consider the complaint in its entirety, not any particular allegation in isolation." *Id.* (citing *Makor* at 322, 127 S.Ct. 2499). The issue of scienter is "very fact-specific, requiring consideration of each individual factor as well as the context as a whole." *In re Eagle Bldg. Techs., Inc., Sec. Litig*., 319 F. Supp. 2d 1318, 1326 (S.D. Fla. 2004). The allegations of scienter cannot be pled generally and must be pled with particularity. *Mizzaro v. Home Depot, Inc.,* 544 F.3d 1230, 1238 (11th Cir.2008). "[T]o determine whether a complaint's scienter allegations can

survive threshold inspection for sufficiency, a court … must engage in a comparative evaluation; it must consider, not only inferences urged by the plaintiff… but also competing inferences rationally drawn from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 314, 127 S. Ct. 2499, 2504, 168 L. Ed. 2d 179 (2007).

In the Eleventh Circuit, § 10(b) and Rule 10b–5 require a showing of either an "intent to deceive, manipulate, or defraud," or "severe recklessness" to satisfy the scienter requirement *Thompson v. RelationServe Media, Inc.,* 610 F.3d 628, 634 (11th Cir.2010). While "factual allegations may be aggregated to infer scienter, scienter must be alleged with respect to each defendant with respect to each alleged violation…." *FindWhat Inv'r Grp. v. FindWhat.com,* 658 F.3d 1282, 1296 (11th Cir. 2011). *See also*, *Mizzaro,* 544 F.3d 1230 at 1238 ("[T]he complaint must allege facts supporting a strong inference of scienter for each defendant with respect to each violation.")(internal quotation marks omitted); *Phillips v. Sci.-Atlanta, Inc.,* 374 F.3d 1015, 1018 (11th Cir.2004)(In order to "proceed beyond the pleading stage," Plaintiff "must allege facts sufficiently demonstrating each defendant's state of mind regarding his or her alleged violations." ).

 While Plaintiff makes sweeping allegations about the Defendants as a whole, Plaintiff makes no allegations to isolate DAP's *own* state of mind or DAP's *own* intention to deceive. *See, e.g.,* Complaint at ¶ 82 (The *Defendants*' secret with respect to the true state of Monaker's financial statements started to unravel….")(emphasis added); Complaint at ¶ 92 (…*Defendants*' materially false and misleading statements or omissions alleged herein directly or proximately caused the damages suffered…)(emphasis added).[5]

### ii.    DAP Did Not Act With Severe Recklessness During Its Audits Of Monaker Financial Statements

Though Plaintiff uses the buzzword "reckless" in some allegations as to DAP, he fails to provide any specific factual support required by the heightened standard under the PSLRA.

---

[5] This type of lump pleading is defective with regard to fraud allegations. *Cordova v. Lehman Brothers, Inc.,* 526 F.Supp.2d 1305, 1313 (S.D.Fla.2007) ("Rule 9(b) does not allow a complaint to merely 'lump' multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant ... and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'")(internal citations omitted); *Great Florida Bank v. Countrywide Home Loans, Inc.*, 2011 WL 382588, at *3 (S.D. Fla. Feb. 3, 2011) (finding dismissal proper where plaintiff pled "in a way that obscures the identity of the party or parties that are alleged to have actually committed the fraudulent actions.").

Severe recklessness is "limited to those highly unreasonable omissions or misrepresentations" involving "an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it." *Id.* Severe recklessness on the part of an independent auditor requires "a mental state so culpable that it approximate[s] an actual intent to aid in the fraud being perpetrated." *La. Sch. Employees' Ret. Sys. v. Ernst La. Sch. Employees' Ret. Sys & Young, LLP*, 622 F.3d 471, 479 (6th Cir. 2010) (internal citations omitted).

Plaintiff alleges that DAP was reckless because DAP failed to ascertain and disclose facts that would reveal the materially false and misleading nature of Monaker's financial statements. Complaint at ¶ 123. Plaintiff alleges this was "especially true" given that DAP "audited the financial statements of both Monaker and RealBiz during the Class Period and was in an overwhelmingly superior position to identify the fraud on the part of Monaker." *Id.* Plaintiff goes on to allege DAP "allowed materially-misstated financial statements to go undetected…" and that its "reckless conduct" caused a loss to Plaintiff. *Id.* at ¶¶ 20 and 125. Plaintiff believes that because DAP had access to both Monaker and RealBiz' financial information, DAP was in a "superior position to catch the fact that the Monaker financial statements were materially misstated…" *Id.* at ¶ 69. Plaintiff also suggests that DAP was reckless because it allowed purported monetary transfers between the companies to "go undetected for years" and that DAP failed to "catch" the "secret and substantial monetary transfers from Monaker to RealBiz" *Id.* at ¶ 70. In doing so, DAP allegedly "breached the professional standards" and assisted defendants Kerby and Monaco in their "concealment of the true financial condition of Monaker." *Id.* at ¶¶ 78-79.

However, Plaintiff must do more than allege that DAP had access to information which would have revealed the purported issues with Monaker's financial statements. *Colonial Bancgroup, Inc.,* 9 F. Supp. 3d at 1267. If DAP was "not aware of facts indicating that a transaction was suspicious, or part of a fraud, the auditor's failure to investigate the transaction—even if negligent—does not provide a basis for a fraud claim." *In re CBI Holding Co., Inc.,* 419 B.R. 553, 566–67 (S.D.N.Y.2009). When claiming that an auditor such as DAP acted with the requisite reckless disregard, a plaintiff must show that "the accounting practices were so deficient that the audit amounted to no audit at all, or an egregious refusal to see the obvious, or to investigate the doubtful…" *Brophy v. Jiangbo Pharm., Inc.,* 781 F.3d 1296, 1307 (11th Cir.

11

2015)(quoting *In re Worlds of Wonder Secs. Litig.,* 35 F.3d 1407, 1426 (9th Cir.1994) (quoting *SEC v. Price Waterhouse,* 797 F.Supp. 1217, 1240 (S.D.N.Y.1992)).

Plaintiff claims to take issue with the way in which DAP conducted its audit.  But "[i]t is simply not sufficient to allege that a defendant should have performed a better or more thorough investigation of the financials at issue or that the auditor had access to the information by which it could have discovered the fraud." *Colonial Bancgroup, Inc.,* 9 F. Supp. 3d at 1267.  As one Court noted, "merely because a person has broad access to every book in a library does not mean that the person has read and chosen to ignore facts contained in a particular book in the library. Merely alleging that [the auditor] had broad access to [the client's] operations at best supports an inference that [the auditor] was negligent, and more likely supports nothing at all."  *In re aaiPharma, Inc., Securities Litig.,* 521 F.Supp.2d 507, 513–14 (E.D.N.C.2007).

The failure of a "non-fiduciary accounting firm to identify problems with a company's internal controls and accounting practices does not constitute recklessness." 9 F. Supp. 3d at 1267 (quoting *In re Longtop Financial Technologies Ltd. Securities Litigation,* 939 F.Supp.2d 360, 377 (S.D.N.Y.2013).  *See also,* *In re Dell, Inc. Sec. Litig.,* 591 F. Supp. 2d 877, 902 (W.D. Tex. 2008) ("[C]ourts have recognized an auditor's failure to detect weaknesses in a company's internal controls alone is insufficient to determine the auditor acted with scienter, even when a restatement later acknowledges deficiencies."); *In re BISYS Sec. Litig.,* 397 F. Supp. 2d 430, 450 (S.D.N.Y. 2005)(alleging that auditor ignored "weakness in accounting controls" did not establish scienter). "In the context of red flags, courts have also noted that an auditor's access 'to the information by which it could have discovered the fraud is not sufficient' to establish recklessness. *In other words, auditor access is not tantamount to auditor awareness.*"  9 F. Supp. 3d at 1268 (quoting *In re Tremont Sec. Law, State Law & Ins. Litig.,* 703 F.Supp.2d 362, 371 (S.D.N.Y.2010)) (emphasis in original).

As the outside auditor for Monaker, DAP's audit reports cover Monaker's financial statements taken as a whole.  DAP applies audit procedures to the internal information in support of its report on Monaker's financial statements.  However, DAP did not, nor was it required to, report specifically on Monaker's internal financial information. Furthermore, if any false statements were made, they were made by others, not DAP. "That [the auditor] should have been suspicious of [the company's] lack of internal controls does not render the audit so fraught with recklessness...." *Grand Lodge of Penn. v. Peters,* 550 F.Supp.2d 1363, 1373 (M.D.Fla.2008).

Given that Monaker was not only allowed to eliminate, but was required to eliminate, the intercompany transactions with its subsidiary RealBiz as part of its financial statements, DAP's audit did not fail to show the "millions of dollars owed by RealBiz to Monaker" *See, e.g.*, Exhibit "C" at p. 72. Plaintiff's allegations fail to give rise to a strong inference that DAP was inept or that there was any recklessness in its role as external auditor. *Brophy v. Jiangbo Pharm., Inc.,* 781 F.3d 1296, 1307 (11th Cir.2015).

Mere negligence is also insufficient to establish an inference of scienter based under a recklessness theory. *Id.* Even if errors were made my DAP (which they were not), this does not rise to the level necessary to show that DAP had the requisite intent. The Eleventh Circuit rejected the notion that errors are enough to satisfy the scienter requirement. In *Garfield v. NDC Health Corp.,* 466 F.3d 1255 (11th Cir.2006) the Court stated that:

> If we were to accept [Plaintiff's] proffered interpretation of Sarbanes–Oxley, scienter would be established in every case where there was an accounting error or auditing mistake made by a publicly traded company, thereby eviscerating the pleading requirements for scienter set forth in the PSLRA. We decline to adopt such an interpretation.

*Id.* at 1266. Even if Plaintiff alleged that DAP committed GAAP and GAAS violations, such allegations alone are "not enough to establish a strong inference of scienter on the part of the independent auditor even if the auditor is grossly negligent in carrying out its responsibilities." *In re Faro Techs. Sec. Litig.*, 534 F. Supp. 2d 1248, 1266 (M.D. Fla. 2007).

### iii.      DAP Did Not Act With An Intent To Deceive Or Defraud Monaker Investors

Plaintiff's allegations fail to make the requisite showing of any intent to deceive, manipulate, or defraud Monaker investors by DAP. As the district court found in *Jiangbo Pharmaceuticals, Inc.,* "Plaintiffs' allegations are insufficient to show that [defendant] knew of any fraud or that the alleged false or misleading information contained in the Company's public statements were so obvious that [it] must have been aware of it." 884 F.Supp.2d at 1262. Plaintiff's allegations are woefully short of the standard required to establish that DAP had any fraudulent intent in its role as external auditor of Monaker's financial records.

As an external auditor, DAP was one step more removed than the other defendants from any alleged indicators of the purported fraud. *See, Reiger v. PricewaterhouseCoopers LLP,* 117 F.Supp.2d 1003, 1007–08 (S.D.Cal. 2000) ("[B]ecause an independent accountant often depends on its client to provide the information base for the audit, it is almost always more difficult to

establish scienter on the part of the accountant than on the part of its client."). "An outside auditor will typically not have an apparent motive to commit fraud, and its duty to monitor an audited company for fraud is less demanding than the company's duty not to commit fraud.

Moreover, there is no allegation that DAP had any financial stake in the stock price or that it stood to benefit if the stock was somehow inflated. Plaintiff simply alleges that DAP received its "audit fees" for RealBiz from Monaker between 2012 and April of 2015. Complaint at ¶ 72. Since Plaintiff failed to allege what, if anything, DAP actually obtained as a result of the alleged fraud, his claim fails. *In re Eagle Bldg. Techs., Inc., Sec. Litig.*, 319 F. Supp. 2d 1318, 1332 (S.D. Fla. 2004).

Plaintiff also fails to identify any motive that DAP would have to be complicit in a scheme to defraud investors.[6] That is because no such motive exists. "An accountant's greatest asset is its reputation for honesty, followed closely by its reputation for careful work. Fees for two years' audits could not approach the losses [an auditor] would suffer from a perception that it would muffle a client's fraud." *DiLeo v. Ernst & Young*, 901 F.2d 624, 629 (7th Cir. 1990).

Finally, as in *Jiangbo Pharmaceuticals,* Plaintiff alleges that DAP is no longer Monaker's auditor. However, "[t]he mere departure of executives or auditors, without more, is insufficient to support a strong inference of scienter, and Plaintiffs fail to allege any facts linking the departures with the alleged accounting fraud." 884 F.Supp.2d at 1268. *See also*, *In re Sportsline.com Sec. Litig.,* 366 F.Supp.2d 1159, 1172 (S.D.Fla.2004) ("The instant Complaint, however, fails to plead any connection between the resignation of [the former president of corporate and business development and the former president of operations] and the accounting errors that led [the company] to restate its financial statements.").

## E.     Plaintiff  Failed To Plead Reliance

### i.      Plaintiff Must Show Actual Reliance Or A Rebuttable Presumption

As announced by the Supreme Court, "[i]nvestors can recover damages in a private securities fraud action only if they prove that they relied on the defendant's misrepresentation in deciding to **buy or sell** a company's stock." *Halliburton Co. v. Erica P. John Fund, Inc.,* 134 S. Ct. 2398, 2405, 189 L. Ed. 2d 339 (2014)(emphasis added). The reliance element "'ensures that there is a proper connection between a defendant's misrepresentation and a plaintiff's injury.'"

---

[6] The Court can take into consideration Plaintiff's lack of allegations regarding DAP's fraudulent motive in its scienter analysis. *Tellabs*, 551 U.S. at 325.

*Amgen,* 133 S. Ct. at 1191–92, (quoting *Erica P. John Fund, Inc. v. Halliburton Co.,* 563 U.S. 804, 131 S.Ct. 2179, 180 L.Ed.2d (2011)). Plaintiff must show that the DAP's fraud—as opposed to some other factor—proximately caused his claimed losses. *FindWhat,* 658 F.3d at 1309.  In order to do so, Plaintiff must either allege that a misstatement induced him to enter into the stock transaction or through a rebuttable presumption under a fraud-in-the-market theory.

### ii.   The Fraud-On-The-Market Theory Is Inapplicable

In order to properly invoke a fraud-on-the-market theory, Plaintiff must show that Monaker stock was traded in an efficient market.  According to the Supreme Court, that occurs when "in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business."  *Basic,* 485 U.S. 224 at 241(quoting *Peil v. Speiser,* 806 F.2d 1154, 1160 (3d Cir.1986)). *See also,* In re Sahlen & *Assocs., Inc. Sec. Litig.,* 773 F. Supp. 342, n 17. (S.D. Fla. 1991) (an efficient market is "(1) [o]ne which a large number of persons can buy or sell; (2) [o]ne which has a relatively high level of activity and frequency, and for which trading information…is widely available…; and (3)[o]ne which rapidly reflects new information in price.").

The Complaint makes vague and conclusory allegations that Monaker stock is traded in an efficient market and that its shares were liquid.  Complaint at ¶ 28 (c)-(d).  As disclosed in the Monaker 10-Ks,  the "Risk Factors" clearly rebut Plaintiff's assertion that Monaker stock was liquid or that it was traded in an efficient market. For example, the 10-K filed four months before Plaintiff initially purchased Monaker stock warned as follows:

> **Risks Related to Investment in Our Securities**
>
> **There is not presently an active market for shares of our common stock, and therefore, you may be unable to sell any shares of common stock in the event that you need a source of liquidity.**
>
> Although our common stock is quoted on the OTCBB, the trading market in our common stock has substantially less liquidity than the trading in stock on other markets or stock of other companies quoted on the OTCBB. A public trading market in our common stock having the desired characteristics of depth, liquidity and orderliness depends on the presence in the market of willing buyers and sellers of our common stock at any time. This presence depends on the individual decisions of investors and general economic and market conditions over which we have no control. In the event an active market does not develop, you may be unable to sell your shares of common stock at or above the price you paid for them or at any price. Also, due to a significant amount of issuances of our stock in a short period of time, the Depository Trust Corporation has placed a temporary "chill" on new issuances which may further delay the transfer of shares.

Exhibit "A" at p. 30.  The 2013-2015 10-Ks also reiterated this position.  *See*, Exhibit "B" at p. 29,  Exhibit "C" at p. 27 and Exhibit "D" at p. 17.

The fraud-on-the-market presumption also requires that a plaintiff purchase his shares on the open market and not through a private sale. *In re Sahlen & Assocs.,* 773 F. Supp. 342 at n. 14. Plaintiff alleges that he purchased "common stock, as set forth in the accompanying certification, which is incorporated by reference herein, and has been damaged thereby." Complaint at ¶ 13. Though Plaintiff did not attach the certification to his Complaint, he subsequently filed the document which stated that:

> **My transactions in Monaker Group, Inc. f/k/a Next 1 Interactive, Inc. which are the subject of this litigation during the class period are set forth in the exhibit hereto.**

ECF No. 8 at ¶4 (emphasis added). While Plaintiff did not attach the referenced exhibit to his certification, he subsequently filed it on February 3, 2017 (ECF No. 25), and it is incorporated by reference into the Complaint.

"Plaintiff's Investment Information" includes four separate Subscription Agreements (ECF No. 25 at pp. 4, 5, 7 and 9). The Subscription Agreements show that Plaintiff purchased Convertible Preferred Class C and D shares of Next 1 Interactive, Inc. (now known as Monaker) between October of 2012 and September of 2014. These private offerings did not include the purchase of any common stock, but rather, provided Plaintiff with the option to convert his shares into common stock at a later date if he chose to do so. *Id.* Plaintiff makes no allegation that his shares were ever converted nor does he attach any transactions that indicate he converted his preferred shares into common stock. Plaintiff's certification also fails to state that he ever separately purchased common stock on the open market or that the shares were ever sold. Where, as here, the exhibits attached and incorporated into a complaint "contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Industries, Inc. v. Irvin,* 496 F.3d 1189, 1206 (11th Cir.2007).

Plaintiff cannot dispute his own sworn certification which clearly shows his only Monaker stock transactions were completed through *private* purchases. As a result, Plaintiff "is not entitled to rely on a fraud on the market theory as [he] did not buy securities in the open market, but rather, in a private dealing." *In re Sahlen & Assocs.,* 773 F. Supp. 342 at n. 14. *See also*, *In re MDC Holdings Sec. Litig.,* 754 F. Supp. 785, 804 (S.D. Cal. 1990) ("This court has previously noted that the fraud on the market presumption of reliance is not available where the securities were offered in more or less private dealings."); *Platsis v. E.F. Hutton & Co. Inc.,* 642 F. Supp. 1277, 1301 (W.D. Mich. 1986), *aff'd,* 829 F.2d 13 (6th Cir. 1987) ("The "market" upon

which the plaintiff "relied" is not the type of market encompassed by the fraud on the market theory. Plaintiff did not purchase on an open market, but in fact purchased through direct contact with the issuer via the prospectuses and the private placement memoranda. Accordingly, the fraud on the market theory is in[a]pposite to the facts of this case.").

"While reliance focuses on the front-end causation question of whether the defendant's fraud induced or influenced the plaintiff's stock purchase, loss causation provides the 'bridge between reliance and actual damages.'" *FindWhat*, 658 F.3d 1282 at 1311 (quoting *In re Cooper Cos. Sec. Litig.,* 254 F.R.D. 628, 638 (C.D.Cal.2009)). "[I]n a fraud-on-the-market case, the plaintiff must prove not only that a fraudulent misrepresentation artificially inflated the security's value but also that 'the fraud-induced inflation that was baked into the plaintiff's purchase price was subsequently removed from the stock's price, thereby causing losses to the plaintiff.'" *Hubbard       v.       BankAtlantic       Bancorp,   Inc.,* 688       F.3d       713,       725       (11th Cir.2012) (quoting *FindWhat,* 658 F.3d at 1311).   Plaintiff failed to make any such allegations and a presumption of reliance based on fraud-on-the market is not appropriate in this case.

### iii.     Plaintiff Cannot Allege Reliance On Any DAP Statements

Plaintiff also fails to adequately plead actual reliance on statements made by DAP.  He makes no allegation that he purchased or sold shares of Monaker based on any statements made or omitted by DAP.  In fact, all of the warning signs regarding Monaker's financial situation and its purchase of RealBiz shares  were spelled out for Plaintiff and other investors in Monaker's public filings.  The fact that Plaintiff chose to ignore the public disclosures cannot justify his reliance.  For example, each of the 10-Ks from 2012-2015 included a section entitled "Risk Factors" that specifically set forth Monaker's perilous financial situation. (*See*, Exhibit "A" at pp. 25-33, Exhibit "B" at pp. 23-31, Exhibit "C" at pp. 19-29 and Exhibit "D" at pp. 12-19).  The 10-Ks evidence that Monaker was also illiquid prior to Plaintiff's purchase of Monaker stock:

**Note 2 - Going Concern**

As reflected in the accompanying consolidated financial statements, the Company had an accumulated deficit of $66,983,176 and a working capital deficit of $14,546,150 at February 29, 2012, net losses for the year ended February 29, 2012 of $13,651,066 and cash used in operations during the year ended February 29, 2012 of $4,822,423. While the Company is attempting to increase sales, the growth has yet to achieve significant levels to fully support its daily operations.

Exhibit "A" at p. 92. These going concerns were also listed on the 2013-2015 10-Ks.  *See,* Exhibit "B" at pp. 91-92, Exhibit "C" at p. 77 and Exhibit "D" at p. 64.  Monaker's purchase of a majority interest in RealBiz was also spelled out for investors in Monaker's 10-Ks.  *See,* Exhibit

"B" at p. 38.  Plaintiff failed to point to any actual statements made by DAP that could constitute reliance on his behalf. His cause of action against DAP fails on this basis as well.

**F**.    **Plaintiff Allegations Regarding Loss Causation And Actual Loss Are Deficient**

   **i.**    **Plaintiff Did Not Allege A Connection Between Any Misrepresentations And A Suffered Loss**

Plaintiff failed to properly plead loss causation as to DAP.  Pursuant to the PSLRA, Plaintiff must also plead that each alleged misrepresentation or omission "caused the loss for which he seeks to recover damages." *See,* 15 U.S.C. § 78u–4(b)(4). This requires the Plaintiff to demonstrate not only that he purchased Monaker stock in reliance on an actionable misrepresentation, but also that the misrepresentation proximately caused the relevant economic loss. *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346, 125 S. Ct. 1627, 1633–34, 161 L. Ed. 2d 577 (2005).  Plaintiff has not adequately pled loss causation which is defined as a "causal connection between the material misrepresentation and the loss." *Id.* at 342.  Plaintiff must "allege that the subject of the fraudulent statement or omission was the cause of the actual loss suffered, i.e., that the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security." *Durham v. Whitney Info. Network, Inc.,* No. 06-CV-00687, 2009 WL 3783375 at * (M.D. Fla. Nov. 10, 2009)(internal citations omitted).

Plaintiff could, in theory, show loss causation by: "(1) identifying a "corrective disclosure" (a release of information that reveals to the market the pertinent truth that was previously concealed or obscured by the company's fraud); (2) showing that the stock price dropped soon after the corrective disclosure; and (3) eliminating other possible explanations for this price drop, so that the factfinder can infer that it is more probable than not that it was the corrective disclosure—as opposed to other possible depressive factors—that caused at least a 'substantial' amount of the price drop." *FindWhat*, 658 F.3d at 1311.

Plaintiff makes no mention of the stock price anywhere in his Complaint.  His failure to do so renders his ability to allege causation impossible. "Establishing a connection between a drop in stock price and the disclosure of the "truth" about a defendant's previous misstatement or omission is essential in pleading loss causation." *In re TECO Energy, Inc. Sec. Litig.*, No. 8:04-CV-1948, 2006 WL 845161, at *2 (M.D. Fla. Mar. 30, 2006). When an auditor is accused of violating  Section 10(b), "the plaintiff must plead that the market reacted negatively to some disclosure correcting the falsity in the . . . auditor's statements (and not simply the underlying

fraud)." *Amoroso v. Ernst & Young LLP*, 682 F. Supp. 2d 351, 363 (S.D.N.Y. 2010).  In other words, the disclosure must reveal that the auditor's opinion was false. *Id.*

Instead of properly alleging loss causation, Plaintiff's contradicts himself by stating that the "market price of Monaker stock was artificially inflated throughout the Class Period," while at the same time alleging that "Monaker's stock price was continually depressed and manipulated…"  Complaint at ¶¶ 37 and 111.  Rather than pointing to a specific drop in stock price, he simply alleges that the "stock fluctuated rapidly" during the Class Period. Complaint at ¶ 87.  Plaintiff makes no allegation whatsoever about the common stock price at the time of purchase and where it stands today.  It is possible, based on the absence of allegations, that the stock price went up. Even if the price somehow fell after a corrective disclosure, Plaintiff has not alleged any correlation between the disclosure and a price drop.   "When the purchaser subsequently resells such shares, even at a lower price, that lower price may reflect, not the earlier misrepresentation, but changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events, which taken separately or together account for some or all of that lower price." *Dura Pharm.,* U.S. 336 at 342–43.  Plaintiff's loss causation allegations are entirely inadequate as to DAP.

### ii.    Plaintiff Does Not Adequately Allege An Actual Loss

The PSLRA mandates that "the plaintiff shall have the burden of proving that the act or omission of the defendant alleged to violate this chapter caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. § 78u–4(b)(4). In other words, "[a] private plaintiff who claims securities fraud must prove that the defendant's fraud caused an economic loss." *Dura Pharm.,* U.S. 336 at 338.  Plaintiff has not alleged, and likely could not allege, that if here were to sell his shares, he would suffer a loss as a result of DAP's alleged misrepresentations and omissions. There is no allegation in the Complaint that the Plaintiff (or the other class members) sold any shares of Monaker stock and suffered an actual loss.

Plaintiff's purported loss allegations are vague and conclusory.  They fail to specify how the stock price was impacted, what losses were suffered or that DAP's misrepresentations or omissions caused the stock price to drop.  Even if the Plaintiff purchased common stock in an open and efficient market, he fails to allege that the corrective disclosure had any impact on the stock price.  Given the amount of information set forth in the public disclosures, it defies logic to suggest that the purported omission of intercompany transfers impacted the share price of

Monaker's common stock during the Class Period.  In fact, any funds spent by Monaker on RealBiz would actually inure to the benefit of Monaker shareholders since Monaker owned shares of RealBiz.  Plaintiff's allegations as to this element are deficient and provide yet another basis for dismissal.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, DAP respectfully requests this Court enter an Order dismissing Count V of the Complaint as to DAP, with prejudice.

Respectfully submitted,
s/Philip E. Ward
Philip E. Ward (Florida Bar No. 869600)
E-mail: pward@gray-robinson.com
Evan D. Appell (Florida Bar No. 58146)
E-mail: evan.appell@gray-robinson.com
GrayRobinson, P.A.
401 East Las Olas Blvd, Ste 1000
Fort Lauderdale, Florida 33301
Telephone:  (954) 761-8111
Facsimile:   (954) 761-8112
*Attorney for Defendant, D'Arelli Pruzansky, P.A.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 17th day of February, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified below via transmission of Notices of Electronic Filing generated by CM/ECF or as otherwise specified below.

John G. Crabtree, Esquire
Charles M. Auslander, Esquire
George R. Baise, Jr., Esquire
Brian C. Tackenberg, Esquire
*Attorneys for Plaintiff*
Crabtree & Auslander
240 Crandon Boulevard, Suite 101
Key Biscayne, FL  33149
jcrabtree@crabtreelaw.com
causlander@crabtreelaw.com
gbaise@crabtreelaw.com
btackenberg@crabtreelaw.com
floridaservice@crabtreelaw.com

Jose A. Loredo, Esquire
Adrian K. Felix, Esquire
*Attorneys for Monaker Group, Inc., William Kerby and Don Monaco*
Carlton Fields Jorden Burt P.A.
100 SE 2nd Street, Suite 4200
Miami, FL  33131
jloredo@carltonfields.com
afelix@cfjblaw.com

John Ernest Clabby, Esquire
Erin Jeanette Hoyle, Esquire
*Attorneys for Monaker Group, Inc., William Kerby and Don Monaco*
Carlton Fields Jorden Burt PA
4221 W. Boy Scout Blvd., Ste. 1000
Tampa, FL 33607
jclabby@carltonfields.com
ehoyle@carltonfields.com

s/Philip E. Ward
Philip E. Ward (Florida Bar No. 869600)
E-mail: pward@gray-robinson.com
Evan D. Appell (Florida Bar No. 58146)
E-mail: evan.appell@gray-robinson.com
GrayRobinson, P.A.
401 East Las Olas Blvd, Ste 1000
Fort Lauderdale, Florida 33301
Telephone:  (954) 761-8111
Facsimile:  (954) 761-8112
*Attorneys for Defendant, D'Arelli Pruzansky, P.A.*