UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  16-62902-CIV-ZLOCH

WILLIAM MCLEOD, individually and
on behalf of all others similarly situated,

        Plaintiffs,

   v.

MONAKER GROUP, INC., f/k/a
NEXT 1 INTERACTIVE, INC., et al.,

        Defendants.
_____/

**DEFENDANT, D'ARELLI PRUZANSKY, P.A.'S,
REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S
CLASS ACTION COMPLAINT**

Defendant, D'Arelli Pruzansky, P.A. ("DAP"), hereby files its Reply in Support of its Motion to Dismiss Plaintiff's Complaint (ECF No. 31) (the "Motion") and in support thereof states as follows:

## I. INTRODUCTION

Nothing in Plaintiff's Memorandum of Law in Opposition to DAP's Motion to Dismiss (ECF No. 41)(the "Opposition") can save his Complaint from dismissal. As set forth in DAP's Motion, this action is nothing more than a disguised derivative suit by a disgruntled Monaker Group, Inc. ("Monaker") shareholder. Plaintiff is essentially alleging internal corporate mismanagement by Monaker through an alleged fraudulent scheme to keep intercompany transfers hidden from the outside world. In doing so, Plaintiff reaches to improperly impute DAP, the outside auditor, for allegedly being part of this hidden plan and failing to uncover it. To the contrary, DAP had no knowledge of, and did not participate in, the alleged actions that form the basis of Plaintiff's Complaint. Rather, DAP conducted its audit in compliance with GAAP and GAAS, properly auditing the appropriate treatment of the intercompany transfers between Monaker and its consolidated subsidiary, RealBiz Media Group, Inc. ("RealBiz").

Plaintiff's Opposition fails to sufficiently address the fatal deficiencies in the Complaint. Specifically, Plaintiff ignores that DAP was simply an auditor and had no control over Monaker's financial statements. He also continues to ignore the true relationship between Monaker and RealBiz while mischaracterizing the requirements for financial transactions between the two entities. Next, Plaintiff fails to establish that DAP acted with an intent to defraud or that it was severely reckless in its role as auditor. Far from inflating or glowingly describing Monaker's economic condition or prospects to mislead potential investors, DAP openly questioned in every audit whether--because of the Company's substantial operating losses-- Monaker could continue to operate as a going concern. DAP warned potential investors throughout the entire claim period that, because of Monaker's extremely precarious financial condition, it could go out of business at any moment. It simply defies logic to suggest that DAP included this "death knell" warning in every audit to induce investors to purchase this speculative penny stock.[1] As will be discussed in detail below, Plaintiff fails to adequately address the arguments raised by DAP in its Motion, and Plaintiff's Complaint must be dismissed.

---

[1] With no operating revenues and fully-disclosed operating losses throughout the claim period totaling more than tens of millions of dollars, the alleged failure of DAP to depart from standard

1

## II.   ARGUMENT [2]

### A.   Plaintiff Mischaracterizes DAP's Role

Plaintiff's Complaint improperly uses words and phrases like "certifying the accuracy" and "verified" to describe what DAP did as auditor of Monaker's financial statements. *See*, *e.g.,* Complaint at ¶¶ 42, 44, and 49. Similarly, Plaintiff's Opposition incorrectly uses phrases like "affirmed that Monaker's financial reporting was accurate" and "affirming the accuracy" to define DAP's role. Opposition at pp. 3-4.  By using the foregoing phrases, Plaintiff would have this Court believe that DAP guaranteed the accuracy of Monaker's financial statements.  It did not.

As set forth in the Motion, DAP did not prepare Monaker's financial statements nor does Plaintiff allege that it did.  DAP's audit report did not guarantee Monaker's financial statements were accurate.  Rather, as Monaker's outside auditor, DAP applied audit procedures to the internal information in support of its opinion that, taken as a whole, Monaker's financial statements were presented fairly in all material respects. If any false statements were made, they were made by others, not DAP.

### B.   Plaintiff Continues to Ignore that RealBiz was a Consolidated Subsidiary of Monaker

Plaintiff mischaracterizes Monaker's relationship with RealBiz throughout its Complaint. It does so by defining RealBiz and Monaker as a "separate company," "two separate companies," an "entirely separate company," "entirely separate entities," and an "entirely separate real estate business." [3] Never once does the Complaint assert that RealBiz was, in fact, a consolidated subsidiary of Monaker as DAP points out in its Motion. Specifically, on October 9, 2012, RealBiz became a disclosed consolidated subsidiary of Monaker. It remained a disclosed consolidated subsidiary of Monaker until October 31, 2014, when Monaker's interest in RealBiz dropped below 50% and the two companies were deconsolidated.  ECF No. 31-5 at p. 6.

---

accounting practices and report intercompany transfers could not possibly have "inflated" Monaker's stock price or misled even the most naïve, unsophisticated investor into believing that Monaker was a thriving, economically viable entity. This perhaps explains why Plaintiff alleges no actual stock prices (whether before the alleged omissions, after the so-called corrective disclosure, or even in connection with any *actual* purchase or sale of Monaker's common stock). Plaintiff's omission of this critical information compels dismissal  of his wholly unspecific securities fraud claim.
[2] DAP hereby incorporates Section I of the other Defendants' Reply (ECF No. 47 at pp. 2-9).
[3] Complaint at  ¶¶ 2, 33, 36, 40, 41, 42, 43, 47, 48, 57, 59, 60, 61, 62, 67, 87, and 90.

In its Opposition, Plaintiff finally acknowledges that "Monaker and RealBiz were consolidated companies until October 14, 2015." Opposition at pp. 5-6.[4] However, Plaintiff returns to his argument that Monaker and RealBiz were two distinct entities. Opposition at p. 8 ("…despite the fact that Monaker and RealBiz were two separate companies…"). The fact that RealBiz was a consolidated subsidiary of Monaker is factually and legally paramount since Monaker was not required to disclose intercompany transactions on its financial statements under GAAP during the consolidation period. *See,* ECF No. 31-4 at p. 73. Plaintiff continues to ignore these GAAP requirements and the true nature of the Monaker and RealBiz relationship.

### C. The Hiring of a Successor Auditor and an Alleged Corrective Disclosure Are Not Dispositive

Plaintiff suggests that since DAP is no longer Monaker's auditor that this somehow implicates DAP in the purported fraud at issue. However, "[t]he mere departure of executives or auditors, without more, is insufficient to support a strong inference of scienter, and Plaintiffs fail to allege any facts linking the departures with the alleged accounting fraud." *Jiangbo Pharmaceuticals, Inc., Securities Litigation*, 884 F.Supp.2d 1243, 1268 (S.D. Fla. 2012). Moreover, the fact that Monaker issued corrective disclosures does not impute wrongdoing on DAP. When an auditor is accused of violating Section 10(b), "the plaintiff must plead that the market reacted negatively to some disclosure correcting the falsity in the . . . auditor's statements (and not simply the underlying fraud)." *Amoroso v. Ernst & Young LLP*, 682 F. Supp. 2d 351, 363 (S.D.N.Y. 2010). Plaintiff failed to make that allegation here.

Additionally, the *Clarified Statements on Auditing Standards* provide that a successor auditor should request management to communicate with the predecessor auditor when facts come to the attention of the successor auditor that indicate that the prior audited financial statements may contain material errors. *See*, *Clarified Statements on Auditing Standards,* AU–C § *510.12-14* (2016). Plaintiff's Complaint does not, and cannot, allege that any such communication was made with DAP. Rather, Plaintiff simply implies that the fact there was a successor auditor who issued a corrective disclosure somehow implicates DAP. It does not.

### D. Materiality is Ripe for a Ruling on a Motion to Dismiss

DAP is not asking the Court to delve into the substance of Plaintiff's materiality allegations. Rather, its argument is that Plaintiff failed to adequately plead this required element.

---

[4] The actual date of deconsolidation was October 31, 2014. ECF No. 31-5 at p. 6.

3

Determining materiality at the motion to dismiss stage is not premature. *See, e.g., Philadelphia Fin. Mgmt. of San Francisco, LLC v. DJSP Enterprises, Inc.,* No. 10-61261-CIV, 2011 WL 4591541, at *15 (S.D. Fla. Sept. 30, 2011) ("In sum, Plaintiffs have failed to allege adequately that Defendants made false or misleading material statements about DJSP's operational practices. Therefore, the Court will grant Defendants' Motion to Dismiss with respect to these statements.") and *Druskin v. Answerthink, Inc.,* 299 F. Supp. 2d 1307, 1329 n.32 (S.D. Fla. 2004) (finding that "materiality can be determined as a matter of law").

As discussed in DAP's Motion, Plaintiff fails to adequately allege that he purchased, held or sold shares of Monaker stock based on any material representation or omission made by DAP. In his Opposition, Plaintiff makes the blanket statement that "materiality is easily satisfied" because "DAP's misstatements and omissions of fact were critical to investment decisions." Opposition at p. 7.  The only factual allegations discussed in the Opposition relate directly to Monaker and RealBiz's actions and not those of DAP.

Plaintiff also failed to fulfill the materiality requirement because he has not alleged that there is a "substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Oxford Asset Mgmt. v. Jaharis,* 297 F.3d 1182, 1189 (11th Cir.2002) (*citing Basic Inc. v. Levinson,* 485 U.S. 224, 23132, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988)). Plaintiff only makes the statement that he and other purported class members "purchased Monaker stock based on materially false and misleading information causing them to suffer damages…" Complaint at ¶ 92. Plaintiff's "conclusory allegations of misrepresentations and omissions lack the necessary "who, what, when, where, and how, of the misconduct charged," and do not set forth "what is false or misleading about a statement [or omission], and why it is false." *Westlake Servs., LLC v. Credit Acceptance Corp.,* No. CV1507490SJOMRWX, 2015 WL 9948723, at *9 (C.D. Cal. Dec. 7, 2015).  Plaintiff cannot satisfy the materiality requirement.

### E.  **Plaintiff's Scienter Case Law is Misapplied and Supports Dismissal**

It is undisputed that in order to sustain a 10b-5 claim against an auditor, a plaintiff must plead particular facts giving rise to an inference that the auditor intended to defraud investors or that it was severely reckless. *Mizzaro v. Home Depot, Inc.,* 544 F.3d 1230, 1238 (11th Cir.2008). Plaintiff's Complaint fails to do this.  Rather than intending to defraud investors, DAP actually

4

warned investors of Monaker's ability to continue as a viable company. Indeed, the case law cited by Plaintiff actually supports DAP's position that scienter was not adequately pled.

In *In re Witness Sys., Inc. Sec. Litig.*, No. 1:06-CV-1894-CC, 2008 WL 9020538 (N.D. Ga. Mar. 31, 2008), the plaintiff's securities fraud complaint included causes of action against auditor KPMG.  The Court dismissed plaintiff's complaint against KPMG, with prejudice, after the Court found that, as is the case here, the plaintiff simply alleged vague and conclusory GAAS and GAAP violations. The Court found this insufficient to establish scienter as to an auditor.  *Id.* at *9. The allegations made by Plaintiff here are substantially similar to those that were found insufficient in *Witness Sys.* Plaintiff baldly asserts that DAP breached its obligation to "exercise professional skepticism" pursuant to SAS 99.  Complaint at ¶ 75.  Plaintiff goes on to recite other accounting standards and how they should be applied.  *Id.* at ¶¶ 76-77.  However, Plaintiff fails to specify or state with any particularity any actions by DAP that actually violated professional standards.  *In re Witness Sys.* at * 6.  Plaintiff also points to Monaker's restated financial statements as a basis to show that DAP acted with scienter. However, the "mere fact that a company restated its financial statement does not by itself indicate that an auditor acted with scienter." *Id.* at *4.

Similarly, in *In re Spear & Jackson Sec. Litig.,* 399 F. Supp. 2d 1350 (S.D. Fla. 2005), the plaintiff alleged that the auditor defendant violated GAAS by, among other things, representing that the financial statements at issue complied with GAAP and by not maintaining an "independent mental attitude."  *Id.* at 1362.  In its motion to dismiss, the auditor defendant argued that the complaint failed to properly allege scienter because the plaintiff simply listed the GAAP and GAAS violations without alleging actual instances of "red flags" that provided an inference of severe recklessness.  *Id.* Like the Plaintiff here, the plaintiff in *Spear* alleged that the auditor was negligent in violating GAAS. *Id. See, e.g.,* Complaint at ¶ 70 ("[DAP]'s negligence is underscored by the fact that [DAP] reviewed and analyzed the Monaker and RealBiz bank statements during the class period…").  The Court ultimately found that the allegations were insufficient to survive a motion to dismiss against the auditor defendant and that the plaintiff failed to allege sufficient red flags to find that the auditor was severely reckless.  *Id.* at 1363. In doing so, the Court noted that the "purported red flags cannot simply 're-hash' the alleged GAAP violations." *Id.* Additionally, a plaintiff cannot establish scienter against an auditor by simply alleging that the auditor would have found fraud if it did not violate GAAS.  *Id.*

5

In *Ziemba v. Cascade Int'l, Inc.,* 256 F.3d 1194 (11th Cir. 2001), the Eleventh Circuit upheld the dismissal of a plaintiff's complaint against an auditor for failure to properly plead a claim for securities fraud.  In *Ziemba*, the plaintiff alleged that the auditor defendant failed to include "going concern" qualifications for the company and its subsidiaries. *Id.* at 1208.  The "red flags" at issue in *Ziemba* consisted of the auditor's alleged possession of documents and other information which plaintiffs argued should have required going concern qualifications in the audit opinion prepared. *Id.* at 1210. The plaintiff asserted that the auditor defendant failed to exercise professional care in the examination and preparation of its financial report and did not make adequate informative disclosures. The Eleventh Circuit determined that the purported GAAP or GAAS violations did not satisfy the particularity requirement of Rule 9(b) and affirmed the district court's ruling dismissing the case. *Id.* at 1213.  In stark contrast to the auditor defendant in *Ziemba*, DAP included going concern sections in its audits of the Monaker financial statements.  *See* ECF Nos. 31-1 at p. 93, 31-2 at pp 92-93, 31-4 at p. 78 and 31-5 at p. 65.  Plaintiff also fails to allege any facts suggesting actual awareness by DAP of any fraud allegedly perpetrated by Monaker. Plaintiff has not pointed to any "tips, letters, or conversations raising inferences that [DAP] knew of any fraud."  *Id.* at 1210 (internal quotations omitted).

Plaintiff also cites to several cases that are not factually analogous to the instant action to support its scienter analysis.  He relies on *In re Catalina Mktg. Corp. Sec. Litig.,* 390 F. Supp. 2d 1110, 1113 (M.D. Fla. 2005) to support his proposition that GAAS violations can be considered when determining if scienter was properly alleged.  However, in *Catalina*, there was no auditor named as a defendant. The entity and its directors and officers were the only named defendants.  Thus, the analysis is inapposite.

Next, Plaintiff relies on *Carley Capital Group v. Deloitte & Touche, L.L.P.,* 27 F. Supp. 2d 1324 (N.D.Ga.1998).  In *Carley Capital,* when denying the auditor's motion to dismiss, the Court found that the plaintiffs had adequately alleged scienter. However, the facts of this case are clearly distinguishable from those at issue in *Carley Capital*.  Importantly, and in direct contrast to the facts at issue here, the Court emphasized that the auditor was "not just an auditor" but "was heavily involved in the management of Medaphis and had unrestricted access to its financial records and data." *Id.* at 1339.  Therefore, unlike the relationship between Monaker and DAP, the auditor in *Carley Capital* worked closely with the defendant entity in preparing its financial statements.

6

In *In re Sunterra Corp. Sec. Litig.*, 199 F. Supp. 2d 1308 (M.D. Fla. 2002), the Court actually declined to follow the rationale of the Court in *Carley Capital*. There, the plaintiff attempted to rely on the holding in *Carley Capital* to support its position that the allegations were sufficient to maintain a securities fraud claim against an auditor defendant. *Id.* at 1334. The *Sunterra* Court found that *Carley Capital* was "factually distinguishable due to the auditor's extensive involvement with the corporation—a circumstance which appears to have been weighed heavily by that district court and which has not been alleged as to Arthur Andersen in the instant case." *Id.* at 1335. There is no allegation here that DAP, as an outside auditor, was heavily involved with Monaker's day to day business operations and the findings of the *Carley Capital* Court should not be applied here. [5]

Similarly, in *Cheney v. Cyberguard Corp.,* No. 98-6879-CIV-GOLD, 2000 WL 1140306 (S.D. Fla. July 31, 2000), the defendant auditor moved to dismiss plaintiffs' complaint and argued that plaintiffs failed to establish scienter. *Id.* at *10. Strikingly, the defendant auditor in *Cheney* did not deny that it violated accounting or audit principles or that its audit opinion provided to be materially false or misleading. *Id.* However, the auditor did argue that the allegations made by the plaintiffs were insufficient to establish scienter. Plaintiffs' scienter allegations were tied to the auditor's publication of "inaccurate accounting figures and its failure to follow accounting and auditing principles." *Id.* The plaintiffs also alleged red flags that the auditor purportedly ignored easily discoverable fraud and that the auditor either knew about it or was reckless in ignoring it. *Id.* The Court found that these allegations were insufficient to support an inference of scienter and granted dismissal, with prejudice, of the 10(b) claim against the auditor. *Id.* at *12. *See also*, *Chill v. General Elec. Co.,* 101 F.3d 263, 270 (2d Cir.1996) ("Allegations of a violation of GAAP provisions or SEC regulations, without corresponding fraudulent intent, are not sufficient to state a securities fraud claim.").

Given the authority cited by DAP in its Motion, and the cases relied upon by Plaintiff in his Opposition, it is clear that Plaintiff's allegations fall well short of properly pleading scienter as to DAP.

### F. Plaintiff Cannot Rely on the Fraud on the Market Theory

Plaintiff did not allege, and cannot allege, that he relied on any DAP representations when purchasing or selling Monaker stock. Rather than rely on actual reliance to support his

---

[5] The *Ziemba* Court also declined to follow the holding of *Carley Capital*.

7

claim against DAP, Plaintiff is left with an ill-fated attempt to invoke the "fraud on the market" theory to establish reliance -- by alleging that Monaker stock was traded on a "public, efficient, OTC market…" [6]  However, Plaintiff appears to ignore that the 10-Ks filed during the class period specifically noted that Monaker stock did not trade in an open and efficient market.  *See* ECF Nos. 31-1 at p. 31, 31-2 at p. 30, 31-4 at p. 28 and 31-5 at p. 18.  Plaintiff cannot rely on the publicly filed information he relies on to form the basis of his claim, while, at the same time, argue that it should be ignored when it rebuts his claims.

While the Eleventh Circuit has not adopted a mandatory analysis for market efficiency, it is not without a framework. As the Court noted in *Local 703, I.B. of T. Grocery & Food Employees Welfare Fund v. Regions Fin. Corp.*, "our more flexible approach of leaving the analysis in the capable hands of District Courts by no means implies that we have given no guidance."  762 F.3d 1248, 1255 (11th Cir. 2014). Contrary to Plaintiff's position, the Eleventh Circuit emphasized that, "we have indeed defined some features of an efficient market: high-volume trading activity facilitated by people who analyze information about the stock or who make trades based upon that information." *Id.*  Monaker's public filings made clear that Monaker stock did not meet this articulated criteria. Plaintiff cannot rely on his boilerplate allegations when the 10-Ks clearly show that Monaker stock was not traded on an efficient market.

Furthermore, the fact that Plaintiff argues that Monaker stock only traded in an OTC market is fatal to his fraud-on-the-market theory of reliance.  Numerous courts have held that as a matter of law the OTC market is not efficient. *See, ScripsAmerica, Inc. v. Ironridge Glob. LLC*, 119 F. Supp. 3d 1213, 1251 (C.D. Cal. 2015) ("Scrips cannot invoke the fraud-on-the-market presumption of reliance because its shares trade on the OTC market; although it has added allegations that the market in its stock is efficient, those allegations fail to plead the fact plausibly."); *Salvani v. ADVFN PLC,* 50 F.Supp.3d 459, 473 n. 9 (S.D.N.Y.2014) ("while the NASDAQ is recognized as maintaining an efficient market ... the Court is unaware of any court holding that the OTCBB ... meet[s] this same standard")(internal quotation marks omitted)); *Epstein v. Am. Reserve Corp.,* No. 79–CV–4767, 1988 WL 40500, *5 (N.D.Ill. Apr. 21, 1988)

---

[6] Plaintiff does not actually allege, in his Complaint, that Monaker stock traded in an OTC market.  Instead, he relies on the 2014 10-K referenced by DAP in its Motion and his argument in response to the other Defendants' Motion to Dismiss (ECF No. 40 at p. 14).  Plaintiff cannot amend his allegations through his response to DAP's Motion to Dismiss. *Miccosukee Tribe of Indians of Florida v. United States*, 716 F.3d 535, 559 (11th Cir. 2013).

8

("Although the issue was not briefed, we believe that the over-the-counter market is incapable of meeting the Supreme Court test [as set forth in *Basic*]"); *In re Data Access Sys. Securities Litigation,* 103 F.R.D. 130, 138 (D.N.J.1984) ("The trading on the over-the-counter market may not constitute an 'active and substantial' market necessary to apply the fraud-on-the-market theory.").

Plaintiff also disputes DAP's assertion that he did not purchase his shares on the open market, but, rather, through private offerings. In doing so, Plaintiff argues that whether or not he purchased his shares on the open market is a factual determination. That argument rings hollow. The Private Securities Litigation Reform Act of 1995, 15 U.S.C. §78u-4(a)(2), requires a plaintiff to file a certification setting forth all of the transactions in the security that is the subject of the Complaint. Plaintiff's certification evidences that his only Monaker transactions came through private offerings for accredited investors. *See* ECF Nos. 8 and 25. Plaintiff's failure to plead that he purchased any common stock or converted his shares is not a concession by DAP that this requires a "factual inquiry." Instead, Plaintiff's failure to certify the purchase of shares on the open market is a fatal pleading deficiency that requires dismissal. His certification evidencing only private purchases makes any amended pleading futile.

### G.  Plaintiff Failed to Sufficiently Plead Loss Causation

The Eleventh Circuit has instructed that "[b]ecause Rule 10b-5 sounds in fraud, the plaintiff must plead the elements of its violation" – including loss causation – "with particularity." *Thompson v. RelationServe Media, Inc.*, 610 F. 3d 628, 633 (11th Cir. 2010). Plaintiff failed to do so.

Plaintiff relies on *In re: Petrobras Sec. Litig.,* No. 14-CV-9662 (JSR), 2016 WL 1533553 (S.D.N.Y. Feb. 19, 2016) [7] to support its contention that he adequately pled loss causation. However, in *Petrobras*, unlike this case, the auditors issued a clean audit report on the company's financial statements and plaintiffs alleged that the auditor certified that the company had effective internal controls. *Id.* at *1. The loss causation analysis in *Petrobras* turned on the alleged losses and writedowns that the auditor approved in the financial statements. *Id.* at *3.

---

[7] The factual backdrop for the audit period in *Petrobras* is clearly distinguishable in that there were internal company investigations into kickbacks, news reports regarding company corruption, a committee was assembled to investigate kickbacks, a senior company executive was arrested for participation in a money laundering scheme, and a court found evidence of improper conduct on the part of company executives which resulted in a $792 million fine.

9

The Court found that the allegations against the auditor as to loss causation were sufficient and gave rise to an inference that had the auditor discovered the alleged fraud and withheld the clean audit options, plaintiffs would have been spared a portion of their losses. *Id.*

That situation is not present here. Plaintiff must "allege that the subject of the fraudulent statement or omission was the cause of the actual loss suffered, i.e., that the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security." *Durham v. Whitney Info. Network, Inc.,* No. 06-CV-00687, 2009 WL 3783375 at * (M.D. Fla. Nov. 10, 2009). Plaintiff failed to do so. Instead, Plaintiff substantiates the need for dismissal by stating that losses "can be more acutely described if Plaintiff is called upon to do so." Opposition at p. 18.

Additionally, Plaintiff tries to distinguish *Amorosa v. Ernst & Young LLP,* 682 F. Supp. 2d 351 (S.D.N.Y. 2010). However, its attempt to do so misses the mark. In *Amorosa*, the Court found that the plaintiff "failed to allege, as required, that the market reacted negatively to some corrective disclosure regarding the falsity of statements" made by the auditor in its opinion letter. *Id.* at 364. As the Court noted in *Amorosa*, "[i]ndeed, paragraph 30, which Amorosa relies on to substantiate his loss causation allegations, does not mention the June 1999 Opinion by name; does not mention any *audited* or *annual* financial statement (of which the June 1999 Opinion is one); and does not mention Ernst & Young or any other auditors." *Id.* (emphasis in original). The same dynamic exists here. Plaintiff makes no allegation that a corrective disclosure caused the market for Monaker stock to react negatively. He simply alleges that the "stock fluctuated rapidly" during the Class Period and does not tie the purported fluctuation to a corrective disclosure. Complaint at ¶ 87. Plaintiff must plead that the market had a negative reaction to a corrective disclosure in order to satisfy this element, and he failed to do so.

### III.   CONCLUSION

For the foregoing reasons, and those initially set forth in DAP's Motion, DAP respectfully requests this Court enter an Order dismissing Count V of the Complaint, with prejudice.

Respectfully submitted,

s/Philip E. Ward
Philip E. Ward (Florida Bar No. 869600)
E-mail: pward@gray-robinson.com
Evan D. Appell (Florida Bar No. 58146)
E-mail: evan.appell@gray-robinson.com
GrayRobinson, P.A.
401 East Las Olas Blvd, Ste 1000
Fort Lauderdale, Florida 33301
Telephone:  (954) 761-8111
Facsimile:   (954) 761-8112
*Attorney for Defendant, D'Arelli Pruzansky, P.A*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 31st day of March, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified below via transmission of Notices of Electronic Filing generated by CM/ECF or as otherwise specified below.

| | |
|---|---|
| John G. Crabtree, Esquire<br>Charles M. Auslander, Esquire<br>George R. Baise, Jr., Esquire<br>Brian C. Tackenberg, Esquire<br>*Attorneys for Plaintiff*<br>Crabtree & Auslander<br>240 Crandon Boulevard, Suite 101<br>Key Biscayne, FL  33149<br>jcrabtree@crabtreelaw.com<br>causlander@crabtreelaw.com<br>gbaise@crabtreelaw.com<br>btackenberg@crabtreelaw.com<br>floridaservice@crabtreelaw.com | Jose A. Loredo, Esquire<br>Adrian K. Felix, Esquire<br>*Attorneys for Monaker Group, Inc., William Kerby and Don Monaco*<br>Carlton Fields Jorden Burt P.A.<br>100 SE 2nd Street, Suite 4200<br>Miami, FL  33131<br>jloredo@carltonfields.com<br>afelix@cfjblaw.com<br><br>John Ernest Clabby, Esquire<br>Erin Jeanette Hoyle, Esquire<br>*Attorneys for Monaker Group, Inc., William Kerby and Don Monaco*<br>Carlton Fields Jorden Burt PA<br>4221 W. Boy Scout Blvd., Ste. 1000<br>Tampa, FL 33607<br>jclabby@carltonfields.com<br>ehoyle@carltonfields.com |

        s/Philip E. Ward
        Philip E. Ward (Florida Bar No. 869600)
        E-mail: pward@gray-robinson.com
        Evan D. Appell (Florida Bar No. 58146)
        E-mail: evan.appell@gray-robinson.com
        GrayRobinson, P.A.
        401 East Las Olas Blvd, Ste 1000
        Fort Lauderdale, Florida 33301
        Telephone:  (954) 761-8111
        Facsimile:  (954) 761-8112
        *Attorneys for Defendant, D'Arelli Pruzansky, P.A.*